Harry T. Nusbaum, J.
In this action to enforce a trust arising under article 3-A of the Lien Law, the plaintiff, Raisler Corporation, suing on behalf of itself and all other subcontractor beneficiaries of the trust, has moved for summary judgment against the defendants Uris 55 Water Street Company (hereinafter referred to as "U55 Partnership”), Uris 55 Water Street Corporation (hereinafter referred to as "U55 Corp.”), Uris Building Corporation (hereinafter referred to as "UBC”), and Chemical Bank New York Trust Company (hereinafter referred to as "Chemical”). Each of the defendants moved against has cross-moved for summary judgment. Unless otherwise indicated all sections hereinafter referred to numerically are sections of the Lien Law.
*219 The action arises out of construction of a building known as 55 Water Street in New York County (hereinafter referred to as the "project”). Plaintiff, a heating, ventilating and air conditioning contractor, entered into a contract on June 27, 1969 with U55 Corp. to perform such work on the project. U55 Corp., a New York corporation, was organized by its parent UBC for the single purpose of owning, contracting and operating the project. U55 Corp. acquired the land for the project, obtained construction financing and contracted with the plaintiff and the other contractors. UBC is not a party to any of the construction contracts entered into by U55 Corp., nor did it guarantee the performance or payment of obligations specified in such contracts. Financing for the project in the amount of 130 million dollars was obtained by U55 Corp. from the defendant, First National City Bank, pursuant to a building loan agreement dated June 25, 1969. Ownership in the project was transferred on October 21, 1969 from U55 Corp. to U55 Partnership, a New York limited partnership organized by U55 Corp., the sole general partner, and Chemical, a 15% limited partner. All obligations incurred by U55 Corp. in connection with the project, including plaintiff’s contract, were assumed by U55 Partnership.
In support of its motion, the plaintiff isolates four specific payments relied upon because the surrounding facts are assertedly undeniable and establish in each instance, according to the plaintiff, a diversion of trust funds in violation of article 3-A of the Lien Law. It is apparently plaintiff’s theory that if the papers in support of its motion conclusively demonstrate an article 3-A violation by defendants on at least one occasion, judgment in its favor on the question of liability, if not damages, would be warranted.
The plaintiff contends that three of these payments represent a transfer of trust funds from U55 Corp., as owner-trustee, to UBC. It offers proof that the funds so transferred are traceable to proceeds of U55 Corp.’s construction loan with First National City Bank representing a portion of the assets of a trust of which U55 Corp. was trustee pursuant to section 70 (subd 5, par [a]) of the Lien Law. The fourth alleged diversion, according to plaintiff, represents a transfer of trust funds from U55 Partnership as contractor trustee, to UBC and Chemical in violation of section 70 (subd 6, par [a]) of the Lien Law. Plaintiff traces these last-mentioned funds to a payment made by one of the tenants as consideration for certain *220 "tenant work” performed on such tenant’s behalf by U55 Partnership.
With respect to the first, third and fourth alleged diversions, plaintiffs proof establishes that the balances in the several bank accounts kept by the trustee, assumed by plaintiff to be free of trust restrictions, were insufficient to cover challenged payments. It follows that a part of the funds alleged by the plaintiff to be held in trust under section 70 (subd 5, par [a]; subd 6, par [a]) of the Lien Law were necessarily applied by the trustee for the purpose of making these threfe payments. An issue of fact exists in this regard with respect to the second alleged diversion assuming, as defendants argue, that the trustee might properly consider money to be fungible for purposes of fulfilling its trust responsibilities.
Thus, the following issues are raised: (1) whether the funds applied by the trustee in making the three transfers noted above were assets of a trust; and (2) if such funds were assets of a trust, whether the defense of restoration is available to any of the defendants absent compliance with the notice of lending requirements set forth in section 73 of the Lien Law.
Peripheral issues raised are: (1) whether plaintiffs action is barred by the applicable Statute of Limitations; and (2) whether issues of fact exist as to the owner’s default on its contractual obligations to the members of the class represented by the plaintiff.
The funds received by U55 Corp. under its construction loan were the assets of a trust of which U55 Corp. was the trustee (Lien Law, § 70, subd 5, par [a]). The transfer of any part of these funds to UBC before payment or discharge of all trust claims was a diversion of trust assets (Lien Law, § 70, subd 1). Absent compliance with the notice of lending requirements set forth in section 73 of the Lien Law, the transfer can be set aside as an unlawful diversion and the affirmative defense that the transfer was made as security for, or in consideration of, or in repayment of previous advances made to or on behalf of the trustee and actually applied for a purpose of the trust is not available unless it is shown that adequate notice was otherwise brought home to the beneficiaries (Caristo Constr. Corp. v Diners Fin. Corp., 21 NY2d 507, 514; National Sur. Corp. v Fishkill Nat. Bank, 61 Misc 2d 579, affd 37 AD2d 537). The first alleged repayment of $11,000,000 out of the proceeds of the construction loan by U55 Corp. to UBC clearly falls *221 within this prohibition. Prior advances are not available as affirmative defenses.
Defendants contend that a "comprehensive view of the entire construction project” would reveal that the trust beneficiaries received the benefit of nontrust properties brought to the project by its sponsors far exceeding in amount the diversions alleged by the plaintiff. This perspective fails to recognize, however, that the privilege of the trustee to commingle funds "is considerably mitigated by the elaborate provisions found in the statute for accounting for trust proceeds and expenditures” (Aquilino v United States of Amer., 10 NY2d 271, 281).
Section 75 is designed to make certain that the trustee does not ignore its trust responsibilities by entering into financial arrangements whereby trust funds are dealt with as though they are fungible moneys (Caristo Constr. Corp. v Diners Fin. Corp., supra, p 515). The concept that money is fungible does not, therefore, excuse a diversionary transfer as defined in section 72 of the Lien Law, or lend support to the contention of the Uris defendants that the challenged payments could be considered as though their source were in nontrust funds brought to the project by UBC. The failure of the Uris defendants to come forward on this motion with the books and records described in section 75, or summaries, abstracts or relevant parts thereof, is presumptive evidence that the trustee has complied or consented to the application of trust funds for nontrust purposes (Lien Law, § 75, subd 4). This presumption has not been rebutted on the papers before the court.
On the other hand, the proceeds of the transaction realized by the U55 Partnership upon payment from one of its tenants for tenant work did not constitute assets of a trust under any of the subdivisions of section 70 (subd 5). The U55 Partnership as owner of the improvement did not, therefore, become a trustee with respect to these funds. Nor can it be characterized as a contractor with respect to this particular transaction and be held accountable as a trustee under section 70 (subd 6, par [a]). A landlord who undertakes to improve space for a tenant is acting as an owner and not a contractor, regardless of any contractual arrangements between the landlord and tenant concerning the sharing of the costs of improvement (McManus, Longe, Brockwehl v Palmer, 24 AD2d 1055; see, also, McNulty Bros, v Offerman, 221 NY 98).
*222 As the funds received are from the tenant and were not assets of a trust of which the U55 Partnership was trustee, summary judgment dismissing the complaint is granted in favor of Chemical. The other defenses and arguments raised by Chemical are therefore rendered academic. For reasons hereinafter indicated, similar relief is denied to the U55 Partnership even though the only proof of diversion offered by the plaintiff on this motion as against the U55 Partnership involves payment received from the tenant.
The Uris defendants argue alternatively that even if the affirmative defense provided under section 73 is not available to them because of the failure to file a notice of lending, nevertheless funds equal to or greater than the total amount allegedly diverted were returned to the trustee subsequent to the occasion of the first alleged diversion, and that such funds were actually applied by the trustee for proper trust purposes. The plaintiff is prepared to concede this set of facts for the purposes of its own motion, although not for the purposes of the defendant’s cross motions. The concession is apparently made to facilitate a ruling as to whether "restoration” of diverted funds by a transferee, together with the use of such funds by the trustee for proper trust purposes is, as a matter of law, a good defense to an action brought pursuant to article 3-A of the Lien Law. It is plaintiff’s contention that the defense is not available absent compliance with the notice of lending requirements set forth in section 73.
The return of an allegedly improper transfer is recognized as a defense, even though a notice of lending has not been filed, provided the funds thereby brought to the improvement are shown to have been used for the purposes of the trust (Travelers Ind. Co. v Central Trust Co. of Rochester, 47 Misc 2d 849, affd 27 AD2d 803). Relief in the nature of setting aside an unauthorized payment or other transfer should not be available to unpaid beneficiaries of a Lien Law trust when the assets contemplated when the work was undertaken have been fully realized, and are available in the form of present cash to meet future trust claims as they mature. To hold otherwise would be to impose a double penalty without any explicit statutory authority therefor, such as that found in section 73 pertaining to the retention of trust funds by a lender in repayment of funds previously advanced. As the court stated in Travelers Ind. Co. v Central Trust Co. of Rochester (supra) at page 853: "The court observes in passing *223 that the defendant should receive no merit award for completely ignoring and at least technically violating the express provisions of article 3-A of the Lien Law. But if the defendant proves these defenses, its punishment for the infraction will be the expense of this lawsuit and not liability to the plaintiff, which will have lost nothing by reason of the alleged improper financial dealings. By reason of its violation, the defendant has subjected itself to this lawsuit and the burden of proving the truth of its affirmative defenses. The law is not designed to impose a penalty upon a violator so as to create a windfall of double repayment for creditors”.
Article 3-A of the Lien Law was enacted by the Legislature to insure that funds received by way of a building loan contract were held and used solely for the benefit of subcontractors and other persons or purposes entitled to be paid therefrom, pursuant to law. The trusts created thereby are endowed with almost all the elements and safeguards surrounding testamentary or inter vivos trusts, and the beneficiaries and purposes of such trusts must be fully protected (Aquilino v United States of Amer., supra, p 281). Violations of the trust relationship, therefore, must not and cannot be encouraged, but unreasonable punishment should not be meted out to trustees who diligently attempt to carry out the purposes of the trust.
The court holds that the defendants may prove the amounts diverted were restored in such manner that the expectations of those who might look to the construction loan extended by the First National City Bank as a source of credit information were in all respects met. Accordingly, the plaintiffs motion is denied, except to the extent hereinafter indicated.
The cross motions for summary judgment made by the Uris defendants are denied as issues of fact exist as to whether equivalent or greater sums of money were returned by UBC to the trustee than were alleged diverted to it, and, if so, whether such restored moneys were applied to costs of improvements as defined by subdivision 5 of section 2 of the Lien Law.
The affirmative defense interposed by the defendants based upon the applicable Statute of Limitations (Lien Law, § 77, subd 2) is dismissed. The documentary evidence submitted by the plaintiff demonstrates that improvements were in fact undertaken within one year prior to the commencement of this action. The trust of which the owner is a trustee contin *224 ues with respect to every asset of the trust until all trust claims arising at any time during the improvement have been paid or discharged, or until all such assets have been applied for the purposes of the trust (Lien Law, § 70, subd 3). No reason appears why the phrase "every trust claim” should not include the improvements which defendants characterize as "minor punch list work”. Substantial completion of the project is insufficient to trigger the operation of the limitations of time to sue under the Lien Law (Ingalls Iron Works Co. v Fehlhaber Corp., 327 F Supp 272, 281-282).
With respect to the defendants’ contentions that an issue of fact exists as to the amounts due or whether the owner of the project is in default on its contractual obligations to the members of the class represented by the plaintiff, the defendants fail to supply evidentiary detail rebutting plaintiff’s specific allegation and documentary proof demonstrating that $631,166 remains unpaid on its contract.
Though subject to the affirmative defense of restoration, the papers submitted by the plaintiff on this motion make out a prima facie case of diversion. Proof of diversion of trust assets is not a condition precedent to an action for an accounting and other relief under article 3-A of the Lien Law (Frontier Excavating v Sovereign Constr. Co., 30 AD2d 487). A fortiori, the court’s right to exercise surveillance over the trustee pursuant to section 77 (subd 3, par [a], cl [iv]) seems especially appropriate when a prima facie case of diversion has been made out. Moreover, the accounting proceeding itself will tend to facilitate the resolution of various issues bearing upon the extent of any diversions and the degree to which such diversions have been corrected through restoration. Having assumed ownership of the project, it is necessary that U55 Partnership, the trustee, remain in the action as the proper party to account.
Accordingly, plaintiff’s motion for summary judgment is denied, except to the extent that it requests an interim accounting. Settle order dismissing the action against Chemical, together with an interlocutory judgment providing for an interim accounting.