OPINION OF THE COURT
Roger D. McDonough, J.
Petitioner/plaintiff (Global) seeks an order and judgment awarding the following relief: (1) compelling respondents/defendants to act upon Global’s title v air permit modification application (title V application) within 14 days by either: (a) preparing a proposed permit, or (b) denying the permit; (2) annulling respondents’ purported rescission of the notice of complete application and compelling respondents to complete the title V permit application review process in accordance with established procedure; (3) declaring that respondent New York State Department of Environmental Conservation (NYS-DEC) failed to act in a timely manner and is precluded from rescinding the November 21, 2013 negative declaration; (4) directing respondents to issue an amended negative declaration; (5) ordering respondents to fully disclose all requested documents sought in Global’s outstanding Freedom of Information Law (FOIL) (Public Officers Law § 85 et seq.) requests or to provide, in writing within 30 days of this court’s decision, the specific exemptions cited for refusing production; (6) awarding attorneys’ fees against respondents for FOIL violations; and (7) awarding costs and attorneys’ fees related to all other matters. Respondents oppose the petition/complaint (petition) *570 in its entirety. The proposed intervenors-respondents/defend-ants argue that the petition/complaint should be dismissed.[1]
The intervenors seek the following relief: (1) to intervene as respondents/defendants in this matter; (2) to consolidate this proceeding with a related proceeding pending in Albany County Supreme Court before Justice Elliott (Benton v New York State Dept. of Envtl. Conservation, index No. 3010-14) (Benton proceeding); and (3) an order directing NYSDEC to file a complete administrative record. Respondents do not oppose the proposed intervention. Additionally, respondents cross-move to join this matter with the Benton proceeding pursuant to CPLR 602 (a). The respondents maintain that joinder as opposed to consolidation will properly address the intervenors’ concerns. Finally, respondents maintain that the proposed additions to the administrative record are not germane to the legal issues presented in Global’s petition. Global opposes all of the intervenors’ requested relief as well as the cross motion brought by respondents.
The court heard oral argument in this matter on December 10, 2015. During the pendency of the motions, Global’s counsel corresponded with the court on February 26, 2016. Therein, Global advised that NYSDEC had still not taken any further action on Global’s title V application. Additionally, Global notes that NYSDEC has not sought out any additional information regarding the pending title V application.
Background
Title V Application
Global has a 63-acre petroleum bulk storage and transfer facility located in the City of Albany. It submitted a title V application in June of 2013. The title V application seeks permission to make the following changes: (1) installation of seven natural gas-fired units to indirectly heat petroleum products; (2) conversion of one storage tank from distillate storage to crude oil storage; (3) conversion of another storage tank from gasoline, crude or ethanol storage distillate storage; and (4) reconfiguration of, and enhancements to, the adjoining Kenwood rail yard to allow for offloading of certain heated petroleum products.
NYSDEC issued a notice of incomplete application in July of 2013. Global responded in September of 2013. Additionally, *571 Global met with NYSDEC regional staff in October of 2013. In November of 2013, Global submitted a revised title V application. On November 21, 2013, NYSDEC issued a State Environmental Quality Review Act (SEQRA) (ECL 8-101 et seq.) negative declaration and a draft title V air permit as well as a notice of complete application (NOCA). On November 27, 2013, NYSDEC published the notice of complete application for the underlying project. A deadline of December 27, 2013 was set for public comment submissions. Said deadline was extended on several occasions by NYSDEC. The ultimate deadline became December 1, 2014. NYSDEC held a public information meeting on the underlying project in February of 2015.
In March of 2014, NYSDEC sought additional information from Global. Global responded in May of 2014. In April of 2014, NYSDEC transmitted a letter from the United States Environmental Protection Agency (EPA) concerning air emission-related information for the underlying project. Global responded in August of 2014. NYSDEC requested more information in September of 2014. Global responded in October of 2014.
Global prepared a draft responsiveness summary at the conclusion of the public comment period. The summary was submitted to NYSDEC in March of 2015. In May of 2015, Global demanded that NYSDEC submit a proposed title V permit to the EPA for EPA review. The demand was issued in accordance with the passage of an 18-month time period beginning with the NOCA issued on November 21, 2013. NYSDEC responded with a May 21, 2015 letter notifying Global of NYSDEC’s intent to rescind the November 21, 2013 negative declaration. The letter further explained that NYSDEC had rescinded the November 21, 2013 NOCA. Global responded with a June 30, 2015 letter, accompanied by two expert affidavits. In August of 2015, one of the intervenors’ counsel (attorney Amato) submitted a letter to NYSDEC in support of NYSDEC’s May 21, 2015 letter. Global responded with its own letter later that month.
FOIL Requests
Global submitted an April 24, 2014 FOIL request to NYSDEC seeking, inter alia: (1) records linking NYSDEC and attorney Amato; and (2) records relating to the permitting process for similar boiler projects in the state. NYSDEC provided the first installment of responsive records on July 31, 2014 and indicated that the second installment would be sup *572 plied in September of 2014. In sum and substance, NYSDEC indicated that the responsive records needed to be produced on a rolling basis based on the volume of the potentially responsive material. Global asserts that, despite the delays in responding to Global’s FOIL request, NYSDEC responded in a timely fashion to attorney Amato’s FOIL request. In August of 2014, Global objected to NYSDEC’s production of responsive records. NYSDEC provided additional document responses on September 4, 2014, October 17, 2014, January 15, 2015, and April 2, 2015. Global appealed NYSDEC’s actions/FOIL response in May of 2015. NYSDEC has asserted that it responded to the appeal by providing Global with a number of records that had been previously withheld or redacted.
Global submitted a May 6, 2014 FOIL request to NYSDEC seeking memos between an entity known as Earthjustice and NYSDEC. NYSDEC denied the request on May 14, 2014. The denial indicated that the request was duplicative of and already covered by the April 2014 FOIL request.
Global submitted a June 2015 updated FOIL request seeking NYSDEC records from April 2014 through April 2015 related to crude oil and/or Global. As of September 21, 2015, NYSDEC apparently failed to respond to this request and failed to confirm that it had placed a litigation hold on the destruction of documents.
NYSDEC maintains that it made all reasonable efforts to provide the requested records in a timely and complete fashion.
Benton Proceeding
The Benton proceeding was commenced in June of 2014. Therein, the intervenors seek relief against NYSDEC and Global. Specifically, the intervenors challenge NYSDEC’s November 2013 issuance of an NOCA and a negative declaration. NYSDEC responded to the Benton petition with a motion to dismiss. Subsequent NYSDEC’s actions led the parties and Justice Elliott to stay the motion to dismiss until October 31, 2015.[2]
Discussion
Consolidation/Joinder/Intervention
The intervenors maintain that they are entitled to intervene under CPLR 1012 (a) (2). In support, they cite the following *573 factors: (1) the overlap of law and facts between this matter and the Benton proceeding; (2) the fact that neither Global nor NYSDEC will adequately represent their interests in this matter; (3) the proceeding will impact their legal rights; and (4) the ultimate judgment in the proceeding will be binding on the petitioners. The intervenors also note that, via the request for judicial intervention, Global has already acknowledged that this matter is related to the Benton proceeding. Alternatively, relying primarily on the same primary factors, the intervenors seek permissive intervention. Additionally, the intervenors note that permissive intervention would not in any way delay this proceeding or prejudice the other parties. Respondents do not oppose the motion to intervene.
Global opposes intervention based primarily on the argument that the instant proceeding is exclusively procedural and therefore wholly unrelated to the Benton proceeding. Additionally, Global argues that the intervenors’ interests are not at stake in this proceeding. Global stresses that the intervenors will still have the ultimate right to bring the necessary CPLR article 78 action in the event that Global is wholly successful in this matter. Further, Global argues that the intervenors’ interests are adequately represented by respondents.
The intervenors also seek consolidation of this matter with the Benton proceeding. In support they rely upon: (1) the overlap of issues of fact and law between the two proceedings; (2) the efficiency of avoiding unnecessary costs or delay; (3) judicial economy; and (4) eliminating the possibility of divergent decisions.
Respondents argue that consolidation is inappropriate because Global would end up on both sides of the caption. Instead, they maintain that joinder would adequately address the risk of inconsistent judgments without requiring further pleadings or argument. Respondents also note that consolidation and intervention are unnecessarily redundant.
Global opposes consolidation/joinder on the following grounds: (1) lack of common questions of law or fact; (2) prejudicial impact of introducing irrevelant, extraneous and potentially inflammatory material into this purely procedural dispute; and (3) the fact that judicial economy would not be served by consolidating/joining this matter with Benton.
The court finds that joining the matters for the purpose of a possible trial is warranted under CPLR 602. Specifically, the court relies on the fact that the cases involve the same project *574 and largely focus on the same actions and interactions of NYSDEC (see Perini Corp. v WDF, Inc., 33 AD3d 605, 606-607 [2d Dept 2006]). However, consolidation is inappropriate since the two actions have two different plaintiffs/petitioners and Global and the intervenors would each end up on both sides of the new caption (see Mas-Edwards v Ultimate Servs., Inc., 45 AD3d 540, 540-541 [2d Dept 2007]). The court also concludes that it should retain jurisdiction over the joined proceedings, based on: (1) the status of the two proceedings and the degree of involvement by the respective justices; (2) the fact that the instant proceeding has a FOIL component; and (3) the overall interests of judicial economy.
In light of the court’s joining of the matters, the court also finds that the intervenors have established their entitlement to permissive intervention.
Title V Application
Global argues that respondents violated the Clean Air Act (42 USC 7401 et seq.) as well as New York State statutes and regulations by failing to act on the title V application within the statutory time frames. Accordingly, Global seeks a court order in the form of “mandamus to compel” wherein NYSDEC is directed to make an immediate decision on the title V application.
Respondents maintain that Global has proposed a significant change to the title V application. Further, respondents argue that the public has not had the requisite notice nor opportunity to comment on the change. Relying on 6 NYCRR 621.10 (d), respondents assert that they cannot make a determination on the permit application until Global has provided satisfactory proof of public notice. Respondents note that the EPA specifically explained in April of 2014 that a calculation error by Global could potentially result in NYSDEC having to reopen the title V application for public comment. Lastly, respondents stress that they have implicit power to stop the “18-month clock” by virtue of 6 NYCRR 621.3 (a) and 621.10 (d).
The intervenors maintain that the “18-month clock” was suspended on May 21, 2015 by virtue of the incomplete nature of Global’s application. More specifically, the intervenors allege that NYSDEC was legally prohibited from issuing a decision on the title V application pursuant to 6 NYCRR 617.3 and 621.3 (a) (7). Additionally, the intervenors note that the expiration of the “18-month clock” only provides for judicial review as opposed to mandating any particular judicial outcome.
*575 In reply, Global stresses that it is not asking the court to direct respondents to approve the permit or take any specific action. Rather, Global is asking the court to direct respondents to make a decision on either of the two options available (approval or denial of the permit). Global also notes that the project change was not significant and did not require public notice and comment.
Under the circumstances present here, the court finds that some further action by NYSDEC must be taken to free this matter from the legal limbo that Global has accurately described and established. NYSDEC issued an intent to rescind the negative declaration in May of 2015, yet has taken no apparent action on the application since. NYSDEC has failed to: (1) rescind the negative declaration, amend the negative declaration, or approve the application; (2) advise Global as to what steps Global can or should take to move the project towards the next stage of the decision-making process; (3) request any additional information from Global; and (4) provide •the court with an affidavit from an individual with knowledge as to the next step in the application process. The court finds the language of ECL 19-0311 to be dispositive in this matter. Said statute requires NYSDEC to take final action on a permit application within 18 months after the date of receipt of a complete application (ECL 19-0311 [2] [i]). Additionally, said statute allows for judicial review of NYSDEC’s failure to act on a completed application (id.).
Based on the foregoing, the court finds that the matter must be remanded to NYSDEC for the purpose of NYSDEC issuing a determination in the next 60 days wherein it “take[s] final action on [Global’s] permit application.” (ECL 19-0311 [2] [i].)
This relief is manifestly necessary and appropriate in light of: (1) the passage of the 18-month deadline for title V permit applications set forth in ECL 19-0311 (2) (i); (2) the language in said statute regarding judicial review; and (3) the failure of NYSDEC to take any action in this matter since issuing an “intent to rescind.” Moreover, this relief is necessary in order to remove this matter from administrative limbo and to foster some finality of administrative action that may be meaningfully reviewed by this court. Based on the foregoing, the court finds that the relief of mandamus to compel is warranted under this unique factual scenario (see Klostermann v Cuomo, 61 NY2d 525, 540 [1984]). It should be noted that the court is not compelling NYSDEC to take one specific action on the applica *576 tion. Rather, the court is merely directing NYSDEC to comply with its legal duty as codified in ECL 19-0311 (2) (i) by taking some final action.
Rescission of the NOCA and Negative Declaration
Global contends that respondents cannot legally rescind the NOCA. Rather, Global stresses that the appropriate procedure in this instance would have been for respondents to simply ask Global for the additional information in writing. Global asks the court to declare that respondents had no authority to rescind the NOCA and to further declare that the purported rescission of May 21, 2015 is null and void. Additionally, Global contends that respondents failed to timely rescind the negative declaration as required by 6 NYCRR 617.7 (f). More specifically, Global argues that respondents inappropriately rescinded the negative declaration on the last day of the statutory 18-month period for deciding the application. Global asserts that respondents were obligated to provide an earlier notice of NYSDEC’s intent to rescind, so as to provide Global with a reasonable time to respond. Accordingly, Global argues that the court should issue an order prohibiting respondents from rescinding the negative declaration.
Respondents argue that Global cannot challenge the May 21, 2015 “non-final agency determination” because NYSDEC neither rescinded the negative declaration nor made a final determination on the permit application. As such, respondents maintain that the challenge to the rescission of the negative declaration is unripe. Alternatively, respondents argue that they have fully complied with SEQRA’s substantive and procedural requirements.
The intervenors argue that the rescission was timely pursuant to 6 NYCRR 617.7 (f) (1). Said regulation allows, upon satisfaction of certain factors, for the rescission of a negative declaration at any time prior to a final permit decision. Also, the intervenors argue that rescission of the negative declaration was rationally based on new information, Global’s proposed changes to the project and changed circumstances. Additionally, the intervenors maintain that rescission of the NOCA was required as a matter of law because rescission of the negative declaration rendered the application automatically incomplete. In support, the intervenors point to the language of 6 NYCRR 621.3 (a) (7) which sets forth the requirements of a complete application.
In reply, Global stresses the absence of any legal support for the act of rescinding a NOCA. Additionally, Global contends *577 that blame for the failure to follow the statutory public notice and comment requirements rests with respondents. Global further argues that respondents’ failure does not convey any authority to revoke the NOCA. Also, Global argues that the cause of action for mandamus to compel is fully ripe and exists to address particularly this type of situation where an agency is refusing to act. Finally, Global maintains that respondents have failed to comply with the procedural and substantive requirements for rescinding a negative declaration.
The court has not been persuaded that the rescission in this matter was untimely. While the court recognizes that Global is required to be given an opportunity to timely and properly respond, the court cannot extrapolate said requirement into a court-imposed deadline in this matter. Additionally, the court concludes that this particular issue is unripe for judicial review as NYSDEC’s intent to rescind was not a final administrative action (see Stop-The-Barge v Cahill, 1 NY3d 218, 224 [2003]).[3]
Amendment of the Negative Declaration
Global advises that NYSDEC informed Justice Elliott in the Benton proceeding that it anticipated either rescinding or amending the negative declaration. Accordingly, based on the purported untimeliness of NYSDEC’s rescission, Global argues that NYSDEC must issue an amended negative declaration and send the draft title V air permit to the EPA for review. Global maintains that the amendment is appropriate to reflect the 18 months of additional information and submissions regarding the title V application. However, Global does acknowledge that there is no specific legal requirement that an amended negative declaration be issued.
In addition to relying on prior arguments, respondents assert that the court cannot compel NYSDEC to perform a discretionary act. Further, respondents rely on Global’s own recognition that “there is no specific legal requirement that a lead agency issue an Amended negative Declaration.” The intervenors echo respondents’ arguments as to this issue and specifically cite the use of discretionary language in 6 NYCRR 617.7 (e) (1).
In reply, Global stresses that respondents’ misuse of administrative procedures necessitates that this court make an ap *578 propriate award of equitable relief. Global maintains that the equitable relief should take the form of an amended negative declaration.
The court finds insufficient bases herein to award the extraordinary relief of directing NYSDEC to take any specific action with regards to the application.
Due Process Claim
Global argues that respondents have failed to comply with state and federal statutes as well as the NYSDEC’s own procedural rules and mandates. More particularly, Global describes respondents’ actions as exhibiting fundamental procedural irregularities. Accordingly, Global again stresses its entitlement to an order directing NYSDEC to render an immediate decision on the title V application.
Respondents argue that Global has failed to state a procedural due process violation. Specifically, respondents contend that Global has failed to set forth any constitutionally protected property interests. Respondents also argue that, because it has executive discretion as to the permit application, Global has no protected property interest at stake.
Global’s reply stresses that respondents’ actions, inactions and twisted legal rationale have placed the permit application in an unending state of legal limbo. Additionally, Global maintains that it has a protected interest in receiving a decision on the title V application within the prescribed period.
The court finds that Global has adequately stated a due process cause of action. Additionally, the court has already awarded Global the relief sought pursuant to this cause of action.
FOIL
Global challenges respondents’ incomplete FOIL responses as well as the scope of redactions for certain records. Additionally, Global stresses that respondents have not provided an adequate basis and/or the specific exemptions relied upon in compiling the FOIL records responses and redactions. As such, Global seeks production of the records as well as a list of the records that respondents are withholding. Global also notes that respondents have failed to render an administrative appeal determination in this matter.
Respondents argue that they properly withheld records and/or redacted certain records in accordance with the applicable statutory exemptions. Additionally, respondents assert *579 that they were not required to produce a specific exemption list until the CPLR article 78 proceeding stage. Also, respondents argue that their production schedule of the records was neither unreasonable nor excessive in relation to the breadth of the FOIL requests and the amount of records involved. Respondents advise that they are still continuing to review records that are potentially responsive to the FOIL request. Finally, respondents note that they informed Global in July of 2015 that a litigation hold had been placed on Global files in February of 2014. The intervenors did not address any of the FOIL issues in this litigation. Respondents have provided the court with all of the purported records in question for the apparent purpose of an in camera inspection.
In reply, Global contends that respondents are effectively asking the court to act as the FOIL appeal officer in this matter. Global provides additional case law support for the argument that respondents cannot shift their responsibility to provide a basis for claimed exemptions to the court.
The court has reviewed a sampling of the two compact discs of records with an accompanying certification as well as the factual affidavits from the employees of respondents who were apparently involved in the FOIL process. The first disc contains non-redacted electronic documents, redacted electronic documents and redacted scanned hard copies with redlines around the redactions. The second disc contains withheld documents that are segregated into the following categories: (1) withheld (2) (a); (2) withheld (2) (b); and (3) 10 sets categorized as withheld (2) (g).
The affidavit from NYSDEC’s Records Access Officer indicates that “staff determined that certain responsive records would be produced in redacted format or withheld in their entirety in accordance with statutory exemptions.” The affidavit went on to list the enumerated statutory bases for withholding documents. The affidavit also indicated that NYSDEC has nine regional offices and that the subject FOIL request was forwarded to all FOIL coordinators in the appropriate regions and divisions of NYSDEC. The certification gave a generalized description of the various types of documents involved (i.e., communications between department staff and department attorneys for legal advice; department staff notes, memos, and communications).
The court recognizes the enormity of FOIL requests that NYSDEC deals with as well as the breadth of this particular *580 FOIL request. Nevertheless, the court is concerned by NYSDEC’s failure, during an overly expansive time frame, to provide a complete accounting of the responsive records in its possession from all nine regional offices. The court also questions NYSDEC’s failure to render a final determination on the pending administrative appeal. Additionally, the court is puzzled by NYSDEC’s actions in submitting the records in question for in camera review without providing an affidavit or affidavits from the individual or individuals who actually reviewed the documents and determined which statutory exemptions to apply and why (see generally Church of Scientology of N.Y. v State of New York, 46 NY2d 906, 908 [1979]).
The court finds that the generalized submissions by respondents were insufficient to meet their burden of establishing that the records at issue are exempt from disclosure (see Matter of Rose v Albany County Dist. Attorney’s Off., 111 AD3d 1123, 1126 [3d Dept 2013]). Further, the submissions merely quoted the statutory language exemptions and failed to adequately enumerate or describe the documents withheld and/or a factual basis for the exemption claims (see id.). As such, the court will require a further submission from an individual or individuals from NYSDEC with knowledge as to the following issues: (1) a specific time frame by which Global’s FOIL request will be fully responded to by NYSDEC; and (2) a description of each record the respondents would like the court to review along with a specific factual basis for the claimed statutory exemption. Respondents are to make the requisite submissions within 75 days from the date of this decision, order and judgment.
Counsel Fees
NYSDEC challenges Global’s request for counsel fees as premature and meritless. Specifically, NYSDEC notes that Global is not a prevailing party and has not cited any agreement, statute or rule that would authorize an award of such fees. In reply, Global argues that it is entitled to fees pursuant to the Public Officers Law based upon NYSDEC’s blanket denials of the FOIL requests.
As a preliminary matter, the court finds no statutory or case law basis for an award of costs and counsel fees as to the non-FOIL issues in this proceeding. As to the FOIL issues, the court will revisit the counsel fees issue upon NYSDEC’s completion of its FOIL obligations as delineated by the court above.
*581 Administrative Record
Finally, the intervenors ask the court to order NYSDEC to add certain documents to the administrative record for this proceeding. Specifically, the intervenors maintain that the administrative record should include public comments submitted concerning the Tar Sands Oil Project. The intervenors contend that the documents are vital, integral and bear directly on the issues in this proceeding. Global and respondents argue that the documents are not germane to this proceeding. Respondents also note that the documents will be a part of the Benton administrative record in the event that NYSDEC is ordered to serve an answer to the Benton petition.
The court has reviewed the administrative record and the proposed additions. Said documents are not presently germane to the proceeding in its current form. Specifically, the documents have no true bearing on the issues that are presently before the court via the various motions for relief. The court recognizes that the documents may become a part of the overall proceeding in the event that the intervenors defeat the motion to dismiss the Benton proceeding. However, the documents currently have no place in the administrative record for this proceeding. Accordingly, the proposed record relief must be denied in its entirety.
The parties’ remaining arguments and requests for relief have been considered and found to be lacking in merit.
Based upon the foregoing it is hereby ordered and adjudged that the related Benton proceeding is hereby joined with this proceeding for the purpose of, inter alia, potentially conducting a joint trial/hearing; and it is further ordered and adjudged that the intervenors are granted permissive intervention status in this proceeding; and it is further ordered and adjudged that Global’s third and fourth causes of action are hereby dismissed on ripeness grounds; and it is further ordered and adjudged that the matter is remanded to NYSDEC for NYSDEC to take the statutorily required “final action” on the application within 60 days of this decision, order and judgment; and it is further ordered and adjudged that respondents are directed to comply with the court’s additional FOIL submission requirements within 75 days of the date of this decision, order and judgment; and it is further ordered and adjudged that Global’s request for attorneys’ fees and costs is hereby denied as to all non-FOIL issues in this proceeding, and the court reserves decision on *582 Global’s request for attorneys’ fees and costs as to the FOIL-related matters; and it is further ordered and adjudged that the intervenors’ motion to expand the administrative record is hereby denied in its entirety.

. The intervenors did not address the relief requested in the petition/complaint pertaining to FOIL matters.

. Upon information and belief, Justice Elliott is awaiting this court’s order in the instant proceeding prior to taking any initial action in the Benton proceeding.

. The court acknowledges Global’s argument regarding the legal limbo status of the application and the seemingly unfair use of “ripeness” to insulate ÑYSDEC’s actions/inactions from judicial review. The court finds that this situation has been adequately addressed by the court’s directive as to the title V application.